IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNA MARTINDALE,                                     6:13-CV-1017-TC

        Plaintiff,                                    ORDER

  v.

Commissioner of Social Security,

        Defendant.

COFFIN, Magistrate Judge:

## BACKGROUND

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits.

Plaintiff was 48 years old when the ALJ issued his decision. Plaintiff obtained a high school equivalency diploma and had past relevant work as a deli worker. She alleges disability due to degenerative disc disease and skull tumors that cause headaches. Her alleged onset date is January 1, 2008.

1 - ORDER

The ALJ found that plaintiff could not perform her past relevant work at step four of the sequential evaluation, but that at step five she could perform jobs such as laboratory equipment cleaner, conveyor tender and snack bar attendant.

As discussed below, the Commissioner's decision is reversed and remanded for an award of benefits.

## DISCUSSION

### The ALJ Improperly Rejected Plaintiff's Testimony.

#### A. Plaintiff's Testimony

Plaintiff testified her last full time job was the manager of the Breeze Foundation for Breast Cancer. She worked there for about five years. She had to quit that job due to headaches. She had to close the store about twice a week due to her headaches even though the store was committed to staying open seven days a week.

Plaintiff has had two surgeries to remove bony growths on her skull. The latest was in 2007. She did not receive treatment for her headaches between January 2008 and December 2010 because she did not have medical insurance and she had bad credit due to not paying medical bills. She did not want to add more bills because

2 - ORDER

she could not afford the bills due to the fact she was not working.

During this time she lived with her brother and took care of his children. He gave her room and some board for those services and she received food stamps. At times she could not babysit due to headaches. She had also lived with a friend and cleaned her house.

Plaintiff's main complaint is headaches. During the years plaintiff did not seek medical treatment for her headaches due to a lack of medical insurance, she would take really hot showers which would ease the pain but not make it go away. She would also have to cover her eyes and many times would sit in a dark rom with no noise and lay in bed. Plaintiff has tried over the counter medication which has not helped her.

Since her last surgery, she has noted that her tumors are growing back and that is why she believes her headaches are more frequent. At first, her surgeries reduced her headaches, and then the headaches started coming back.

After her last surgery, plaintiff used medical marijuana to treat her headache symptoms. She used it about four times a week. The marijuana would ease the pain but never really made it go away. The marijuana made the pain more tolerable and would allow her to function. However, because of migraines, plaintiff would be bedridden at least once a month for a couple of days.

3 - ORDER

There have been times when plaintiff has taken pain pills in the past, but she had difficulty functioning. The pills made her feel stupid and loopy.

When her headaches came back after her last surgery they would sometimes last as much as five days. This would occur even with the use of marijuana although marijuana would ease the pain level.

Plaintiff testified that at times she kept a pain log where she would write in pain levels of headaches. Since she obtained health insurance, plaintiff has gone a few times to a hospital for a shot to relieve pain. Plaintiff has not gone to see her doctor. He left and no one replaced him. Plaintiff has not gone to see her doctor much regarding her headaches because the bills would be outrageous and she is a conservative person and her headaches are located where her skull growths are.

### B. The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding her symptoms.

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen, 80 F.3d 1273, 1284 (9th Cir. 1986); see also SSR 96-7p.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of the symptoms described. Thus, absent evidence of malingering, the ALJ was required to provide "clear and convincing" reasons for concluding that "claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Tr. 27, Smolen, 80 F.3d 1273(9th Cir. 1986). The ALJ did not mention malingering in his opinion.

The reasons stated by the ALJ are not clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ rejected much of plaintiff's testimony and found she had significantly diminished credibility. Defendant notes that an ALJ may discount a claimant's symptom testimony if the claimant made inconsistent statements or stopped working for

5 - ORDER

reasons other than the alleged disability. P. 7 of #18, See Bruton v. Massinari, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ noted that the plaintiff's statement in her disability report that she stopped working on November 20, 2007 because her seasonal job had ended contradicted her testimony that she stopped working due to headaches. However, she testified repeatedly that headaches stopped her from working full time in January 2007. Tr. 29, 32. The detail of her disability report indicates that her full time job ended in January of 2007 and her subsequent part-time job ended on November 20, 2007 due to it being seasonal work. Tr. 202.

The ALJ stated that the objective medical evidence does not support the degree of impairment severity alleged by the claimant and the alleged onset date. Tr. 17. The ALJ also found that the records contain no objective medical evidence that plaintiff's skull masses have returned to any significant degree. TR. 15. However, the records show a history of headaches and regrowth and current growth of skull tumors. Dr. Suarez noted in 2006 that plaintiff's growths on her skull removed in 1984 were now growing back and causing headaches, nausea and dizziness. R 346. In February 2007, Dr. Miller wrote :

> [The skull tumors] could actually be causing
> local irritation in the suboccipital nerves,
> causing suboccital pain and headaches....I
> certainly think it could be causing headaches
> ....The tumor needs to be removed.... I think
> it is probably going to involve at least some

6 - ORDER

>   entrapment of the scalp nerves, and I think
>   removing it will help to some degree.

Tr. 252. In March, 2007, Dr. Miller wrote:

>   She also reports fairly bad suboccipital and
>   sometimes generalized headaches approximately
>   once every three days. The tumor has grown
>   noticeably larger.

Tr. 239.[1] In September of 2010, plaintiff was seen by Dr. Nelson for an examination requested by the Department of Disability (DDS). He wrote, "[c]uriously after surgery, her headache seemed to subside for awhile only to recur." Tr. 266. On exam, he noted that "she has a slight prominence in the left frontal area, which is likely a new mass in early stages." Id. In December of 2010, Dr. McQueen found there was an abnormal cranial bone growth when plaintiff went to the emergency room for headaches.

The ALJ also stated that plaintiff's treatment history is not commensurate with her allegations. However, in addition to the above, plaintiff went to the emergency room on February 13, 2011 for headache and nausea and received Demerol which made her sleep. Tr. 294. In October 2011, she saw Dr. Suarez who noted she has headaches that she is treating with medical marijuana Tr. 336. Plaintiff testified that she had lacked medical insurance and had bad credit. But the ALJ noted that she still managed to

---

[1] In April of 2007, Dr. Miller removed the tumor and in June 2007 found that she recovered from surgery and could "return to work without any concerns regarding her skull." Tr. 259.

7 - ORDER

afford cigarettes and marijuana. However, plaintiff's continued smoking of tobacco does not impunge her credibility in the circumstances of this case, See, Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009), and the cost of medical marijuana treatment is probably much less expensive than a health insurance plan that includes monthly premiums, deductibles and co-pays. Moreover, plaintiff found that side-effects from prescription pain pills made her stupid and loopy. The ALJ states that progress notes do not substantiate any chronic, significant side effects from prescription pain medications, but all things considered, such does not amount to a convincing reason for rejecting plaintiff's testimony. Similarly, examining Dr. Nolan's speculative comment that an unspecified trial of medication for prophylactic prevention or specific intervention should do well does not amount to a convincing reason for rejecting plaintiff's testimony when all things are considered.

The ALJ also stated that plaintiff's activities contradict her allegations of disability. However, such activities are not inconsistent with claimant's testimony or ability to work on a sustained basis, See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Stubbs-Danileson v. Astrueu, 539 F.3d 1169, 1175 (9th Cir. 2008), as plaintiff states she cannot do these things on a sustained basis as she is bedridden with headaches and nausea two days a month.

The ALJ has failed to provide sufficient reasons for rejecting plaintiff's testimony and the vocational expert testified that a person having to consistently miss two or more days a month of work would not be able to sustain employment. Tr. 56. As such, the award of benefits is appropriate.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for an award of benefits pursuant to sentence four of 42 U.S.C. §405(g).

DATED this __ day of July, 2014.

_____

Thomas Coffin

United States Magistrate Judge

9 - ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNA MARTINDALE,                                          6:13-CV-1017-TC

        Plaintiff,                                          ORDER

  v.

Commissioner of Social Security,

        Defendant.

COFFIN, Magistrate Judge:

### BACKGROUND

Plaintiff brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits.

Plaintiff was 48 years old when the ALJ issued his decision. Plaintiff obtained a high school equivalency diploma and had past relevant work as a deli worker. She alleges disability due to degenerative disc disease and skull tumors that cause headaches. Her alleged onset date is January 1, 2008.

1 - ORDER

The ALJ found that plaintiff could not perform her past relevant work at step four of the sequential evaluation, but that at step five she could perform jobs such as laboratory equipment cleaner, conveyor tender and snack bar attendant.

As discussed below, the Commissioner's decision is reversed and remanded for an award of benefits.

## DISCUSSION

### The ALJ Improperly Rejected Plaintiff's Testimony.

#### A.   Plaintiff's Testimony

Plaintiff testified her last full time job was the manager of the Breeze Foundation for Breast Cancer. She worked there for about five years. She had to quit that job due to headaches. She had to close the store about twice a week due to her headaches even though the store was committed to staying open seven days a week.

Plaintiff has had two surgeries to remove bony growths on her skull. The latest was in 2007. She did not receive treatment for her headaches between January 2008 and December 2010 because she did not have medical insurance and she had bad credit due to not paying medical bills. She did not want to add more bills because

2 - ORDER

she could not afford the bills due to the fact she was not working.

During this time she lived with her brother and took care of his children. He gave her room and some board for those services and she received food stamps. At times she could not babysit due to headaches. She had also lived with a friend and cleaned her house.

Plaintiff's main complaint is headaches. During the years plaintiff did not seek medical treatment for her headaches due to a lack of medical insurance, she would take really hot showers which would ease the pain but not make it go away. She would also have to cover her eyes and many times would sit in a dark rom with no noise and lay in bed. Plaintiff has tried over the counter medication which has not helped her.

Since her last surgery, she has noted that her tumors are growing back and that is why she believes her headaches are more frequent. At first, her surgeries reduced her headaches, and then the headaches started coming back.

After her last surgery, plaintiff used medical marijuana to treat her headache symptoms. She used it about four times a week. The marijuana would ease the pain but never really made it go away. The marijuana made the pain more tolerable and would allow her to function. However, because of migraines, plaintiff would be bedridden at least once a month for a couple of days.

3 - ORDER

There have been times when plaintiff has taken pain pills in the past, but she had difficulty functioning. The pills made her feel stupid and loopy.

When her headaches came back after her last surgery they would sometimes last as much as five days. This would occur even with the use of marijuana although marijuana would ease the pain level.

Plaintiff testified that at times she kept a pain log where she would write in pain levels of headaches. Since she obtained health insurance, plaintiff has gone a few times to a hospital for a shot to relieve pain. Plaintiff has not gone to see her doctor. He left and no one replaced him. Plaintiff has not gone to see her doctor much regarding her headaches because the bills would be outrageous and she is a conservative person and her headaches are located where her skull growths are.

### B. The ALJ Failed to Provide Clear and Convincing Reasons for Rejecting Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding her symptoms.

In assessing a claimant's credibility the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

concerning symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication.  See Smolen, 80 F.3d 1273, 1284 (9th Cir. 1986); see also SSR 96-7p.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of the symptoms described.  Thus, absent evidence of malingering, the ALJ was required to provide "clear and convincing" reasons for concluding that "claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  Tr. 27, Smolen, 80 F.3d 1273(9th Cir. 1986).  The ALJ did not mention malingering in his opinion.

The reasons stated by the ALJ are not clear and convincing reasons for rejecting plaintiff's testimony.

The ALJ rejected much of plaintiff's testimony and found she had significantly diminished credibility.  Defendant notes that an ALJ may discount a claimant's symptom testimony if the claimant made inconsistent statements or stopped working for

5 - ORDER

reasons other than the alleged disability.  P. 7 of #18, <u>See Bruton v. Massinari</u>, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted that the plaintiff's statement in her disability report that she stopped working on November 20, 2007 because her seasonal job had ended contradicted her testimony that she stopped working due to headaches.  However, she testified repeatedly that headaches stopped her from working full time in January 2007.  Tr. 29, 32.  The detail of her disability report indicates that her full time job ended in January of 2007 and her subsequent part-time job ended on November 20, 2007 due to it being seasonal work.  Tr. 202.

The ALJ stated that the objective medical evidence does not support the degree of impairment severity alleged by the claimant and the alleged onset date.  Tr. 17.  The ALJ also found that the records contain no objective medical evidence that plaintiff's skull masses have returned to any significant degree.  TR. 15 . However, the records show a history of headaches and regrowth and current growth of skull tumors.  Dr. Suarez noted in 2006 that plaintiff's growths on her skull removed in 1984 were now growing back and causing headaches, nausea and dizziness. R 346.  In February 2007, Dr. Miller wrote :

> [The skull tumors] could actually be causing local irritation in the suboccipital nerves, causing suboccital pain and headaches....I certainly think it could be causing headaches ....The tumor needs to be removed.... I think it is probably going to involve at least some

6 - ORDER

> entrapment of the scalp nerves, and I think
> removing it will help to some degree.

Tr. 252. In March, 2007, Dr. Miller wrote:

> She also reports fairly bad suboccipital and
> sometimes generalized headaches approximately
> once every three days. The tumor has grown
> noticeably larger.

Tr. 239.[1] In September of 2010, plaintiff was seen by Dr. Nelson for an examination requested by the Department of Disability (DDS). He wrote, "[c]uriously after surgery, her headache seemed to subside for awhile only to recur." Tr. 266. On exam, he noted that "she has a slight prominence in the left frontal area, which is likely a new mass in early stages." Id. In December of 2010, Dr. McQueen found there was an abnormal cranial bone growth when plaintiff went to the emergency room for headaches.

The ALJ also stated that plaintiff's treatment history is not commensurate with her allegations. However, in addition to the above, plaintiff went to the emergency room on February 13, 2011 for headache and nausea and received Demerol which made her sleep. Tr. 294. In October 2011, she saw Dr. Suarez who noted she has headaches that she is treating with medical marijuana Tr. 336. Plaintiff testified that she had lacked medical insurance and had bad credit. But the ALJ noted that she still managed to

---

[1] In April of 2007, Dr. Miller removed the tumor and in June 2007 found that she recovered from surgery and could "return to work without any concerns regarding her skull." Tr. 259.

7 - ORDER

afford cigarettes and marijuana. However, plaintiff's continued smoking of tobacco does not impunge her credibility in the circumstances of this case, See, Bray v. Commissioner, 554 F.3d 1219, 1227 (9th Cir. 2009), and the cost of medical marijuana treatment is probably much less expensive than a health insurance plan that includes monthly premiums, deductibles and co-pays. Moreover, plaintiff found that side-effects from prescription pain pills made her stupid and loopy. The ALJ states that progress notes do not substantiate any chronic, significant side effects from prescription pain medications, but all things considered, such does not amount to a convincing reason for rejecting plaintiff's testimony. Similarly, examining Dr. Nolan's speculative comment that an unspecified trial of medication for prophylactic prevention or specific intervention should do well does not amount to a convincing reason for rejecting plaintiff's testimony when all things are considered.

The ALJ also stated that plaintiff's activities contradict her allegations of disability. However, such activities are not inconsistent with claimant's testimony or ability to work on a sustained basis, See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Stubbs-Danileson v. Astrueu, 539 F.3d 1169, 1175 (9th Cir. 2008), as plaintiff states she cannot do these things on a sustained basis as she is bedridden with headaches and nausea two days a month.

8 - ORDER

The ALJ has failed to provide sufficient reasons for rejecting plaintiff's testimony and the vocational expert testified that a person having to consistently miss two or more days a month of work would not be able to sustain employment. Tr. 56. As such, the award of benefits is appropriate.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for an award of benefits pursuant to sentence four of 42 U.S.C. §405(g).

DATED this 18 day of July, 2014.

Thomas Coffin
United States Magistrate Judge

9 - ORDER